UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**BENJAMIN WASHINGTON, et al,**

      **Plaintiffs**

v.                                              Case No. 1:12-cv-595-HJW

**HSBC MORTGAGE SERVICES, INC.,**

      **Defendant**

### ORDER

Pending is the defendant's "Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(1), or in the Alternative, to Stay Pending Arbitration" (doc. no. 14). Plaintiffs oppose the motion. The Court held a hearing on June 12, 2013, at which counsel presented oral arguments. Having fully considered the record, including the pleadings, the parties' briefs, and the oral arguments, the Court will <u>enforce</u> the parties' written agreement to arbitrate, <u>dismiss</u> the complaint, and <u>deny</u> the alternative request for a stay, for the following reasons:

**I. Background and Factual Allegations**

The alleged facts of this case are straightforward. In 1997, Benjamin and Cynthia Washington ("plaintiffs") purchased a house located at 1009 South 2nd Street, Ripley, Ohio. They indicate that they "subsequently obtained additional loans with subordinated mortgages on the property" (doc. no. 1, ¶ 7). On June 24, 2003, plaintiffs refinanced with the lender MorEquity, Inc. ("MorEquity") (¶ 8). At closing, they signed various documents, including a Note in the amount of $170,000.00, a 30-year Mortgage, an "Adjustable Rate Rider," a "Prepayment Rider to Note," an "Allonge to Note," and a document entitled "Arbitration of

Disputes" (hereinafter "Arbitration Agreement") (Exs. A-E). Plaintiffs attach all these documents to their complaint, except the Arbitration Agreement, which defendant has attached to its motion to dismiss (doc. no. 14, Ex. A).

On its signature page, the mortgage expressly provides that "by signing below, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it" (doc. no. 1-4 at 14). By its express terms, the mortgage further provided that MorEquity could sell the note "one or more times without prior notice" to the plaintiffs and that a sale of the note "might result in a change in the . . . Loan Servicer" (doc. no. 1-4 at ¶ 20).

The record reflects that MorEquity sold the mortgage on August 23, 2003, to Household Mortgage Services ("HMS") (doc. no. 1, ¶ 15; Exs. F, G). Plaintiffs' mortgage was assigned to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for HMS (Ex. G, Assignment of Mortgage).[1] The Assignment indicates: "Recording Requested By Household Mortgage Services," that it was "Filed For Record in Brown County, Ohio on October 3, 2003," and that "When Recorded, Mail and Return to Household Mortgage Services" (Ex. G).

In 2009, the mortgage was assigned by MERS to "HSBC Bank (United States)" (Ex. H, "Corporate Assignment of Mortgage"). The document indicates that, upon the request of HSBC Mortgage Services, Inc. ("HSBC") (formerly HMS), this assignment was "Filed For Record in Brown County, Ohio on September 10,

---

[1] "MERS is a privately-held company that operates a national electronic registry to track servicing rights and ownership of mortgage loans in the United States." <u>Christian Cty. Clerk ex rel. Kem v. MERS</u>, 2013 WL 565198, *1 (6th Cir. 2013).

2009" (Ex. H).[2] Defendant HSBC asserts that it is the current holder of the note and the servicer of the plaintiffs' mortgage (doc. no. 1-6 at 2).

Plaintiffs defaulted on their loan, and HSBC filed a foreclosure action against them in 2009 in the Common Pleas Court of Brown County, Ohio. The parties entered into a settlement agreement that allowed the plaintiffs to remain in their home, and the foreclosure action was dismissed in January of 2011. Subsequently, the plaintiffs defaulted again. On December 28, 2011, the plaintiffs requested information about their mortgage from HSBC. By letter dated January 4, 2012, HSBC responded and advised the plaintiffs that they were over $7,000.00 in arrears on their mortgage payments (doc. no. 1, Ex. F "Letter"). The letter indicates that HSBC furnished plaintiffs with copies of all their 2003 refinancing documents, including the "Arbitration Rider."

Plaintiffs allege that beginning in January of 2012, HSBC's collection department began calling them about their delinquent loan (doc. no. 1, ¶¶ 17-39). They allege that HSBC called them hundreds of times demanding payment and threatening foreclosure (¶¶ 21, 39). Plaintiffs allege that on three occasions between January and March of 2012, they observed an HSBC representative taking photographs of the property "while standing just outside of the property line" (¶ 40). They also allege that, several times, an HSBC representative placed a notice on their front door instructing them to call HSBC (¶ 41).

On August 7, 2012, the plaintiffs filed the present action in federal court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiffs contend

---

[2] HSBC's letter indicates that HSBC was formerly HMS (doc. no. 1, Ex. F).

the matter in controversy exceeds the requisite amount of $75,000.00 and that the parties' citizenship is diverse. Plaintiffs seek a declaration that the defendant HSBC is not the holder of the note, does not hold rights to enforce the note, and does not hold legal or equitable rights under the mortgage (doc. no. 1, ¶ 87 and Prayer for Relief, ¶¶ D, E). Plaintiffs also assert claims under Ohio law for invasion of privacy, intentional infliction of emotional distress, and trespass (¶¶ 48-87). Plaintiffs attached eight exhibits to their complaint, including copies of the Note, Mortgage, Riders, Allonge to Note, Assignments, and HSBC's letter dated January 4, 2012. Plaintiffs' exhibits have been redacted by blacking out their mortgage number (doc. no. 1, Exs. A, B, F, G). Plaintiffs did not attach a copy of the Arbitration Agreement to their complaint.

Defendant HSBC filed the present motion to dismiss (or alternatively to stay this action pending arbitration) and attached an unredacted copy of the parties' Arbitration Agreement reflecting the corresponding loan number (doc. no. 14, Ex. A). Plaintiffs filed a brief in opposition and attached the affidavit of each plaintiff (doc. no. 15, Exs. A, B). The affidavits are substantially similar. After being granted an extension of time, HSBC filed a reply on December 13, 2012 (doc. no. 18). This matter is fully briefed and ripe for consideration.

II. Standard of Review

Although styled as a motion pursuant to Rule 12(b)(1), HSBC's motion is essentially a motion to compel arbitration. As the Court explained in <u>Stepp v. NCR Corp</u>., 494 F.Supp.2d 826, 828 (S.D.Ohio 2007) (J. Rice):

> [The defendant's motion] is not one which comes within the ambit of Rule 12(b) of the Federal Rules of Civil

> Procedure, which allows a defendant to move to dismiss [for lack of subject matter jurisdiction] . . . Instead, the standard . . . is defined by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"), which provides that a party to an arbitration agreement, who is aggrieved by another party's refusal to submit an arbitrable dispute to arbitration, may petition any federal district court which would otherwise have jurisdiction over the underlying matter in order to compel arbitration. 9 U.S.C. § 4; see also 28 U.S.C. § 1331 (original federal question jurisdiction) & 28 U.S.C. § 1332 (original diversity jurisdiction).

The issue before the Court is whether to enforce the parties' express agreement to arbitrate. HSBC asserts that, as part of the refinancing transaction, the parties expressly agreed to arbitrate certain disputes that might subsequently arise. Plaintiffs contend that the written agreement is "unconscionable" and should not be enforced.

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003). In evaluating motions to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." Raasch v. NCR Corp., 254 F.Supp.2d 847, 851 (S.D.Ohio 2003); Blakley v. UBS Financial Services Inc., 2013 WL 360378, *1 (S.D.Ohio 2013); Stepp, 494 F.Supp.2d at 828. The parties do not dispute that this is the appropriate standard of review.

### III.  Discussion

### A. Preliminary Matter: Whether to Disregard an Improper Reference

The Court will first address one preliminary matter. In the plaintiffs' response, plaintiffs' counsel contends that "HSBC's behavior was so bad it made national news" and cites an on-line Huffington Post article about abusive debt collection practices (doc. no. 15 at 3, fn. 1). In the article, plaintiffs' counsel made various comments to the reporter about the alleged facts of the present case.

In reply, HSBC asks the Court to "strike and disregard" the plaintiffs' improper statement and reference to this article. HSBC asserts that the article (and counsel's comments therein) are "not evidence" and are inflammatory, irrelevant, and intended to disparage HSBC (doc. no. 18 at 1).

Fed. R. Civ. P. 12(f) authorizes the striking of "any redundant, immaterial, impertinent, or scandalous matter" from *pleadings*. The rule does not authorize the Court to strike from the record statements made in a brief. See Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 599 (S.D. Ohio 2003); Wright & Miller, Fed. Prac. & Proc., § 1380. That said, the Court may disregard material that it deems inadmissible. Id. at 599-600; Fox v. Mich. State Police Dept., 173 Fed.Appx. 372, 375 (6th Cir. 2006). Plaintiffs' counsel cannot use his own comments to the press about this case as "evidence" in this case. The Court will disregard the improper statement and reference in the plaintiffs' response brief.

### B. Whether the Court Should Enforce the Arbitration Agreement

#### 1. Relevant Law

Section 2 of the Federal Arbitration Act ("FAA") provides:

> **[A] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or in equity for the revocation of any contract.**

9 U.S.C. § 2. The primary purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." <u>Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.</u>, 489 U.S. 468, 479 (1989). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." <u>Deck v. Miami Jacobs Business College Co.</u>, 2013 WL 394875, *2 (S.D.Ohio 2013) (J. Black).

Courts examine "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." <u>Hurley v. Deutsche Bank Trust Co. Americas</u>, 610 F.3d 334, 338 (6th Cir. 2010); see also, <u>Glazer v. Lehman Bros., Inc.</u>, 394 F.3d 444, 450-51 (6th Cir. 2005) ("any doubts regarding arbitrability must be resolved in favor of arbitration"). Plaintiffs acknowledge the policy favoring the enforceability of arbitration agreements (doc. no. 15 at 3).

When considering whether to compel arbitration under the FAA, courts consider: (1) whether the parties agreed to arbitrate; and (2) the scope of the arbitration agreement. <u>Stout v. J.D. Byrider</u>, 228 F.3d 709, 714 (6th Cir. 2000), cert. denied, 531 U.S. 1148 (2001). Additionally, if any federal statutory claims are asserted, the court will consider (3) whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the

claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. Id.

### 2. Whether the Parties Agreed to Arbitrate

First, HSBC asserts that both plaintiffs expressly agreed in writing to arbitrate any disputes "arising" from or "related to" their mortgage and its servicing. HSBC points to the written Arbitration Agreement which bears the signature of both plaintiffs (doc. no. 14, Ex. A). Plaintiffs acknowledge that the Arbitration Agreement "was provided to them the day of closing" and that they signed the plainly-worded two page document (doc. no. 15 at 3). They merely complain that it was "buried in the closing documents." (Id.)

Despite the plainly-worded written Arbitration Agreement bearing their signatures, plaintiffs contend that such agreement is "unconscionable" (doc. no. 15 at 7-12). Whether a contract term is unconscionable is a question of law. Eagle v. Fred Martin Motor Co., 157 Ohio App.3d 150, at ¶ 12 (2004); Ozormoor v. T-Mobile USA, Inc., 354 Fed.Appx. 972, 974 (6th Cir. 2009). State law governs "generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability." Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 686–87 (1996); Great Earth Companies, Inc. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002). Courts consider the enforceability of an arbitration agreement under the applicable state law of contract formation, and thus, Ohio law applies to such issue. Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 666 (6th Cir. 2003).

To be held "unconscionable" under Ohio law, a contract must be both: (1) substantively unconscionable, i.e., unfair and unreasonable contract terms, and

**(2) procedurally unconscionable, i.e., the surrounding circumstances must indicate that no voluntary meeting of the minds was possible.** Morrison, 317 F.3d at 666. "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." Taylor Bldg. Corp. of Am. v. Benfield, 117 Ohio St.3d 352, 359, ¶ 34 (2008). Under Ohio law, "[u]nconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Id. "Procedural unconscionability focuses on the circumstances surrounding the formation of the contract, such as the parties' age, education, intelligence, business acumen and experience," Hayes v. Oakridge Homes, 122 Ohio St.3d 63, 67 (2009), whereas "substantive unconscionability" concerns the commercial reasonableness of the contract's terms. Plaintiffs' arguments fail on both prongs.

Plaintiffs complain that the Arbitration Agreement was part of a large packet of materials presented to them at closing and that they had little time to read it before signing. This provides no basis to find the agreement "unconscionable." HSBC points out that both plaintiffs were literate adults who had entered into loan transactions several times in the past and who knew they would be signing various documents at the scheduled closing. They had the opportunity to read the Arbitration Agreement, which consisted of only two pages written in plain English. They signed such document, thereby declaring that they had read and understood it. Immediately above the plaintiffs' signatures, the document emphasizes "BY SIGNING BELOW YOU ACKNOWLEDGE THAT YOU

**HAVE READ AND UNDERSTOOD THIS AGREEMENT AND THAT YOU AGREE TO ALL OF ITS TERMS."** This plain language, emphasized in large capital letters, undermines the plaintiffs' argument that they "unknowingly signed" such document.

It is well-settled under Ohio law that "one of full age in the possession of his faculties and able to read and write, who signs an agreement and remains acquiescent to its operative effect for some time, may not thereafter escape the consequences by urging that he did not read it or that he relied upon the representations of another as to its contents or significance." <u>Deck</u>, 2013 WL 394875, at *4 (quoting <u>Garcia v. Wayne Homes</u>, 2002–Ohio–1884, at ¶ 43 (Ohio App. 2002)). Plaintiffs vaguely argue that they are "unsophisticated," but do not allege that they are illiterate, "not in possession of their faculties," or otherwise unable to understand the written agreement they signed in 2003. The United States Supreme Court has long observed that "[i]t will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." <u>Upton v. Tribilcock</u>, 91 U.S. 45, 50 (1875); see also, <u>Allied Steel & Conveyors, Inc., v. Ford Motor Co.</u>, 277 F.2d 907, 913 (6th Cir. 1960) (same).

Plaintiffs bore the responsibility to read the documents they signed at closing, including the Arbitration Agreement. They acknowledge that the closing agent brought the papers to their home at the scheduled time and that they took 30-40 minutes to review and sign the papers. Defendant pointed out at the

hearing that plaintiffs acknowledge that they were able to ask questions and that they made no attempt to request the documents in advance or to reschedule the closing. The circumstances provide no basis to find any "unconscionability." See <u>Burden v. Check Into Cash of Kentucky, LLC</u>, 267 F.3d 483, 488 (6th Cir. 2001) (enforcing arbitration agreement because "one who signs a contract is presumed to know its contents"); <u>Anderson v. Delta Funding Corp.</u>, 316 F.Supp.2d 554, 566 (N.D.Ohio 2004) (holding that the "Arbitration Agreement is not procedurally unconscionable" and "is enforceable under Ohio law without further enquiry").

Plaintiffs' suggestion that the Arbitration Agreement was not "orally" explained to them is unavailing. See <u>ABM Farms Inc. v. Woods</u>, 81 Ohio St.3d 498, 503 (1998) ("The law does not require that each aspect of a contract be explained orally to a party prior to signing."); <u>Stachurski v. DirecTV, Inc</u>., 642 F.Supp.2d 758, 765 (N.D.Ohio 2009) (under Ohio law, "[a] party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms"). The arbitration clause was not "hidden" in fine print, nor do plaintiffs allege that it was misrepresented in any way. It was an appropriately-labeled two-page document written in plain English. Plaintiffs willingly signed the document and are bound by their agreement to arbitrate.

Although plaintiffs complain that the parties had unequal bargaining power, "an unequal bargaining position is not, in and of itself, a sufficient reason in law or equity to hold that arbitration agreement unenforceable." <u>Hawkins v. O'Brien</u>, 2009–Ohio–60, at *24 (Ohio App. 2009); see also, <u>Morrison</u>, 317 F.3d at 666 (finding no procedural unconscionability despite unequal bargaining

position, where plaintiff was literate and able to understand contract he signed); Mazera v. Varsity Ford Mgmt. Servs., 565 F.3d 997, 1002 (6th Cir. 2009) (holding that plaintiff's purported "lack of bargaining power" did not render the arbitration agreement invalid); Anderson, 316 F.Supp.2d at 565 ("If unequal bargaining positions alone were evidence of unconscionability, every single consumer mortgage loan transaction ever executed would be flawed."); Deck, 2013 WL 394875, at *4 ("an arbitration clause may be enforceable notwithstanding a disparity in bargaining power"). As the defendant pointed out at the hearing, the present plaintiffs were under no obligation to refinance their property and could choose among various lenders for refinancing. Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 324 (6th Cir. 1998) (when a party has an alternative source with which it could contract, the contract is not "procedurally unreasonable"); Stout, 228 F.3d at 717 (same).

To be unconscionable, "there must be some evidence that, in consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement to the arbitration clause." Deck, 2013 WL 394875, at *4; see also, Stachurski, 642 F.Supp.2d at 768 (same). Plaintiffs have not alleged, and no evidence suggests, that they were defrauded or coerced into signing the Arbitration Agreement. They merely complain that they had a lot of papers to sign in a 30-40 minute period. Plaintiffs had been through the closing process previously and were familiar with the process. Although plaintiffs argue that they felt "rushed," they make no claim for fraud in the inducement and do not allege

any facts to support such a claim. See, e.g., Deck, 2013 WL 394875, at *5. The Arbitration Agreement was not procedurally unconscionable on such basis.

Plaintiffs also complain about several substantive terms in the Arbitration Agreement. For example, they complain that the agreement allows the lender to terminate the agreement and that the agreement excludes from arbitration certain types of claims, such as foreclosure. Plaintiffs argue that such terms render the Arbitration Agreement "one-sided" and "substantively unconscionable."

HSBC points out that the agreement has reasonable contract terms, including a *limited* termination clause (which expired after 120 days) and the requirement of *adequate* notice (60 days) for a request for arbitration (doc. no. 18 at 4). These are common features of such contracts and do not render the Arbitration Agreement "substantively unconscionable" under Ohio law. See, e.g., Morrison, 317 F.3d at 666 (finding that an agreement with a provision for thirty-day notice period was reasonable and enforceable); Raasch v. NCR Corp., 254 F.Supp.2d 847, 856 (S.D.Ohio 2003) (J. Rice) (finding that an agreement to arbitrate certain types of claims was not impermissibly "one-sided); Crowe v. BE & K, Inc., 2010 WL 1640884, *2 (S.D.Ohio) (J. Sargus) (holding that the defendant's contractual right to amend or terminate the agreement upon thirty-days written notice did not render the agreement unconscionable). HSBC asserts, and the record reflects, that, under the express terms of the Arbitration Agreement, HSBC has timely requested submission of this case to arbitration with the American Arbitration Association (doc. no. 14-1 at 1, ¶ 4). Plaintiffs do not dispute the timeliness of plaintiffs' request for arbitration.

With respect to plaintiffs' argument that "only HSBC [had] the right to terminate" the contract, HSBC points out that such limited right expired long ago, and that in any event, the plaintiffs have misconstrued the issue. "The concept of mutuality of obligation requires that both parties to a contract be bound by the terms of the contract." Raasch, 254 F.Supp.2d at 855 (citing 2 Corbin on Contracts, supra, § 6.1 at 197, and Restatement (Second) of Contracts § 79(c)). "Stripped to its essence, the concept of 'mutuality of obligation' expresses the idea that both parties to the contract must be bound or neither is bound." Halle v. Landmark, Inc., 15 Ohio App.3d 1, 472 N.E.2d 765, 776 (Ohio Ct.App.1984); see also, Stepp, 494 F.Supp.2d at 855 (same); Crowe, 2010 WL 1640884 at *2 (same).

In the present case, both the lender and the borrowers are bound by the terms of the Arbitration Agreement (see ¶ 1 "we agree that any dispute, regardless of when it arose, shall be settled, at your option or ours, by arbitration"). "What mutuality of obligation does *not* mean is that the terms of the contract must be equally balanced so that one side cannot benefit from the bargain more than the other." Straub v. Citifinancial Auto Credit, Inc., 2011 WL 587291, *5 (S.D.Ohio) (quoting Raasch, 254 F.Supp.2d at 856) (italic in original)). The parties agreed to arbitrate their claims, subject to certain exceptions, and both sides are bound by that agreement. The Arbitration Agreement is not substantively unconscionable on such basis. Plaintiffs have not shown that the Arbitration Agreement was unconscionable, either procedurally or substantively. Plaintiffs' unconscionability argument fails as a matter of law.

**Finally, the plaintiffs make the attenuated argument that they did not validly agree to arbitrate because the Arbitration Agreement was "separate" from the mortgage, therefore it lacked consideration, therefore it was not a contract under Ohio law, and therefore it is not valid and enforceable (doc. no. 15 at 3, 12-13). The premise of this argument, i.e., that "the Arbitration Agreement is neither linked to the Mortgage nor the Note," is refuted by the record. The Arbitration Agreement identifies the refinancing lender (MorEquity) and the borrowers (both plaintiffs), identifies the plaintiffs' real property (1009 South 2nd Street, Ripley, Ohio), refers to the "loan secured by the property," and bears the same date as the other refinancing documents. Contrary to plaintiffs' misleading and conclusory assertion, the Arbitration Agreement lists a "loan number" and was obviously part of the refinancing transaction. In fact, HSBC's January 2012 letter to the plaintiffs indicates that HSBC provided them with a copy of their refinancing documents, including the "Arbitration Rider." This flatly contradicts counsel's assertion that the plaintiffs "first heard an Arbitration Agreement existed when HSBC filed the instant motion" (doc. no. 15 at 8), particularly since such letter was attached to the plaintiffs' own complaint.**

**With respect to the plaintiffs' argument that the Arbitration Agreement is not "linked" to the note and mortgage, the Court observes that plaintiffs have submitted exhibits with the loan number redacted. Plaintiffs do not explain why this helpful identifying information has been redacted. At the hearing, counsel merely asserted that it is counsel's "standard policy" to do so. The record reflects that in January 2012, HSBC furnished plaintiffs with copies of their 2003**

Page 15 of 20

refinancing documents, including the "Arbitration Rider." When plaintiffs filed suit in August 2012, they did not file the Arbitration Agreement with their exhibits. In light of such omission, HSBC filed an unredacted copy (doc. no. 14, Ex. A). Such document reflects the corresponding loan number. Plaintiffs cannot properly assert that the Arbitration Agreement was "independent from" and not part of the refinancing transaction based merely on their own submission of redacted exhibits. Such argument appears disingenuous at best. See Fed.R.Civ.P. 11(b). At the hearing, defense counsel confirmed that the Note and Arbitration Agreement both bore the same loan number (F0306173) (Def. Hrg. Ex. 1).

Based on plaintiffs' misleading assertion that the Arbitration Agreement is not "linked" to the note and mortgage, plaintiffs urge that the agreement "lacks consideration." Contrary to plaintiffs' assertion, such document specifically indicates that it was "made in furtherance of the [the lender's] funding of the loan at the interest rate(s) referenced in the loan documents" (doc. no. 14, Ex. A, ¶ 2). Plaintiffs received the benefit of their 2003 loan refinancing. Plaintiffs' argument lacks merit. The record reflects that the plaintiffs expressly agreed to arbitrate claims arising from or related to their loan and its servicing. Plaintiffs have not shown that the Arbitration Agreement was unconscionable. Such agreement is valid and enforceable.

### 3. Whether the Plaintiffs' Claims are Within the Scope of the Agreement

Next, the Court must determine whether the plaintiffs' present claims are within the scope of the agreement to arbitrate. See <u>Fazio v. Lehman Bros., Inc.</u>, 340 F.3d 386, 395 (6th Cir. 2003) ("district courts have the authority to decide, as a

threshold matter, whether an issue is within the scope of an arbitration agreement") (citing Stout, 228 F.3d at 714)). Here, the parties agreed to arbitrate any disputes "arising out of or in any way related to the loan; the arranging of the loan, any application, inquiry or attempt to obtain the loan, any loan documents; the servicing of the loan; or any aspect of the loan transaction" (doc. no. 14, Ex. A, ¶ 3). The Arbitration Agreement provides that disputes subject to arbitration include, but are not limited to, "federal or state contract, tort, statutory, regulatory, common law and equitable claims" (¶ 3). Certain types of dispute were specifically excluded from arbitration, such as proceedings for foreclosure, repossession, and "provisional or ancillary remedies" with respect to the loan or any collateral for the loan (¶¶ 3, 5). The Arbitration Agreement specifically indicates that it applies to any dispute with "successors or assigns" (¶ 1).

In their complaint, the plaintiffs ask the Court to declare that HSBC is not the "holder" of the Note, may not "enforce" the Note, and holds no legal or equitable rights under the mortgage" (doc. no. 1, ¶ 87). Such request is based entirely on the note, mortgage, and its assignment, and thus, such controversy plainly "arises out of" or is "related to" the plaintiffs' loan and its servicing. HSBC points out that the plaintiffs' state law claims also "arise out of" or are "related to" the plaintiffs' loan because those claims are based on HSBC's alleged telephone calls and visits to the property. Fazio, 340 F.3d at 395 ("torts can be covered by arbitration clauses"). "A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue." Id. Plaintiffs' allegations are based on HSBC's efforts to collect on the

**delinquent mortgage or otherwise preserve its interests, as provided by the terms of the mortgage (doc. no. 1-4 at 7, ¶ 7 "Lender or its agent may make reasonable entries upon and inspections of the Property."). Plaintiffs' claims could not be maintained without reference to the mortgage or the relationship at issue.**

**Moreover, it is well-settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp</u>., 460 U.S. 1, 24-25 (1983). "If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms." <u>Simon v. Pfizer, Inc</u>., 398 F.3d 765, 773 n. 12 (6th Cir. 2005). All of the plaintiffs' present claims are within the scope of the Arbitration Agreement.**

**As to the third and fourth steps under <u>Stout</u>, HSBC correctly points out that the plaintiffs do not allege any federal statutory claims. <u>Stout</u>, 228 F.3d at 714. The complaint asserts no claims that would fall outside the agreement to arbitrate. HSBC correctly points out that all of the plaintiffs' claims are subject to arbitration (doc. no. 14 at 5). Further analysis under steps 3 and 4 is not required.**

**Despite having filed this federal case and despite having opposed arbitration in their written filings in this action, the plaintiffs (through counsel) indicated for the first time at the June 12, 2013 hearing that they were now "willing to arbitrate" and asked that any arbitration proceed under less costly consumer rules, rather than commercial rules. Counsel confirmed that the plaintiffs, who have been in default at least since 2009 and who have been living "rent free" without paying their monthly mortgage payments, are currently still in**

default. Defendant pointed out that both plaintiffs are currently employed (at Sun Chemical and at Proctor & Gamble). The Court encourages the parties to proceed with the agreed arbitration (or other agreed resolution of this case) in the most efficient manner possible.

**D. Whether to Stay or Dismiss**

Where claims are referred to arbitration, the FAA provides for a stay of the court proceedings "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In cases, such as the present one, where *all* the claims are subject to arbitration, courts may properly dismiss the complaint. See Arnold v. Arnold Corp., 920 F.2d 1269, 1275 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); Hensel v. Cargill, Inc., 198 F.3d 245, 1999 WL 993775, at *4 (6th Cir. 1999) ("litigation in which all claims are referred to arbitration may be dismissed"); Ozormoor, 354 Fed.Appx. at 974-75 (affirming the district court's order compelling arbitration and dismissing the complaint); Stachurski, 642 F.Supp.2d at 774 ("dismissal is appropriate" where all of a plaintiff's claims are subject to arbitration); Raasch, 254 F.Supp.2d at 868 (granting motion to compel arbitration and dismissing case); Crowe v., 2010 WL 1640884, *2 ("because all of the claims made by Crowe in the instant lawsuit are subject to arbitration, the lawsuit is dismissed"); Straub, 2011 WL 587291 at 6 (same). Here, all claims are subject to arbitration.

"The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." Green v.

**Ameritech Corp.**, 200 F.3d 967, 973 (6th Cir. 2000) (quoting **Alford v. Dean Witter Reynolds, Inc.**, 975 F.2d 1161, 1164 (5th Cir. 1992)). "Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." **Gilchrist v. Inpatient Medical Services, Inc.**, 2010 WL 3326742, *5 (N.D.Ohio 2010) (quoting **Nestle Waters N. Am., Inc. v. Bollman**, 2006 WL 3690804, at *6 (W.D.Mich. 2006), affirmed, 505 F.3d 498 (6th Cir. 2007)); see also, **Stout**, 228 F.3d at 714-716 (affirming dismissal "without prejudice to reinstatement should further proceedings be needed after arbitration"). Given that all of the plaintiffs' claims are subject to arbitration, the Court will dismiss, rather than stay, this case.

Accordingly, the defendant's "Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(1), or in the Alternative, to Stay Pending Arbitration" (doc. no. 14) is **GRANTED**; the Court will enforce the Arbitration Agreement, but **DENY** the alternative request for a stay; this case is **DISMISSED** without prejudice and terminated on the docket of this Court.

**IT IS SO ORDERED.**

                                            s/Herman J. Weber

                                            **Herman J. Weber, Senior Judge**
                                            **United States District Court**